IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

KEILI DYSON,                    *

    Petitioner,             *

        v.                      *  CIVIL NO.:    WDQ-13-0136
                                   *  CRIMINAL NO.: WDQ-08-0086
UNITED STATES OF AMERICA,       *

    Respondent.             *

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Keili Dyson pled guilty to conspiracy to conduct and participate in the activities of a racketeering enterprise in violation of 18 U.S.C. § 1962(2). Pending is Dyson's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. No hearing is necessary. *See* Rule 8 of the *Rules Governing § 2255 Proceedings*. For the following reasons, Dyson's motion will be denied.

I. Background[1]

On February 21, 2008, Dyson was charged with conspiracy to conduct and participate in the activities of a racketeering enterprise in violation of 18 U.S.C. § 1962(d), conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846, possession with intent to distribute cocaine base in violation of 21 U.S.C. §

---

[1] The facts are from the parties' filings (ECF Nos. 1319, 1334, 1341) and Dyson's plea agreement (ECF No. 1125).

841(a)(1) and (b)(1)(B), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). ECF No. 1. Dyson entered into a plea agreement with the Government under Federal Rule of Criminal Procedure 11(c)(1)(C). ECF No. 1125. On November 30, 2010, Dyson pled guilty to the first count of the indictment. *Id.* at 1.

In the plea agreement's stipulation of facts, Dyson confirmed that he was a member of the Tree Top Pirus ("TTP") subset of the Los Angeles Bloods. ECF No. 1125 at 9, 12. In 2000, the gang "spread throughout Maryland mostly as a result of recruitment from inside Maryland prisons[, and] [d]uring this time, Steve Willock assumed a leadership role over [TTP] and direct operations from prison." *Id.* at 9. "TTP, including its leadership, members and associates, constituted an "enterprise" as defined in Section 1961(4) of Title 18, United States Code, that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise." *Id.* at 11. The enterprise's objectives included:

> Preserving and protecting the power, territory and profits of the enterprise through the use of intimidation, armed robberies, violence, including assaults and murder, and threats of violence, and narcotics trafficking;

> Promoting and enhancing the enterprise and its members' and associates' activities, both in and out of prison through the use of intimidation, violence, including assaults and murder, and threats of violence, and narcotics trafficking;
>
> Keeping victims and potential victims in fear of the enterprise and in fear of its members and associates, through violence and threats of violence;
>
> Providing financial support and information to gang members, including those who were incarcerated for committing acts of violence or other offenses; and
>
> Providing assistance to other gang members who committed crimes for and on behalf of the gang in order to hinder, obstruct and prevent law enforcement officers from identifying the offender, apprehending the offender and trying and punishing the offender.

*Id.* at 12. Dyson "agreed that a conspirator [in the enterprise] would [have] commit[ted] at least two acts of racketeering activity in the conduct of the affairs of the enterprise." *Id.*

Dyson also stipulated to facts about his personal involvement in TTP. On March 23, 2007, Dyson "wrote to [] Willock [in prison] and gave him his new mailing address in the Anne Arundel County Detention Center." ECF No. 1125 at 13. Dyson also sent Willock money. *Id.* "In a letter dated July 13, 2007, Willock wrote to Anthony Bell and told Bell, 'I've put the [Original Young Gangster]² S.K. (a reference to [] Dyson) in charge of things on

---

² "Original Young Gangster" or "OYG" is the most junior rank in TTP's hierarchy. ECF No. 1125 at 11. On October 9, 2007, Dyson met with other TTP members and "requested status greater than his OYG rank." *Id.* at 13. He was told that "'the books are

that side and I look to hear positive things from here on out.'" *Id.* In other letters to Dyson, Willock asked for information and gave Dyson instructions. *Id.*

On October 18, 2007, detectives went to 4215 Audrey Avenue to execute a search and seizure warrant. ECF No. 1125 at 14. "Prior to the execution of this warrant, Dyson was observed wearing a black hooded sweatshirt." *Id.* at 15. Detectives also observed Dyson "remove a handgun from his right side, wipe it off with his sweatshirt, and hand it to another individual." *Id.* That person placed the sweatshirt and the gun "just inside the common door to the apartment." *Id.*

When the detectives executed the warrant, Dyson "was located sitting at a table in the living room with numerous empty ziplock bags used for packaging controlled substances for street level distribution in front of him on the table." ECF No. 1125 at 14. When Dyson was searched, detectives recovered a plastic bag containing approximately seven grams of cocaine base, a Newport cigarette pack containing empty green ziplocks used for packaging controlled substances for street level distribution as well as 13 orange ziplocks containing cocaine base, a razor blade and digital scale with cocaine residue, and a cell phone from his pockets. *Id.* at 14-15. Detectives also recovered the

---

closed' in terms of accepting new TTP members because the Feds are watching them." *Id.*

sweatshirt and gun that had been placed by the front door. *Id.* "Inside the pocket of the sweatshirt was a plastic bag with an apple logo. That plastic bag contained 38 green ziplock bags each of which contained cocaine base." *Id.* at 15. "After being Mirandized, Dyson stated, 'Man, that gun ain't mine. Print it and see.'" *Id.* Dyson agreed that "[d]uring the period charged in the Indictment, [he] and other TTP members participated in a conspiracy to distribute and possess with intent to distribute controlled substances," and "it was reasonably foreseeable to [him] that the conspiracy involved at least 22.4 grams, but less than 28 grams, of cocaine base, commonly known as crack." *Id.* at 14.

The plea agreement contained a "factual and advisory guidelines stipulation." ECF No. 1125 at 4. The parties agreed that the base offense level was 24, with a two-level upward adjustment because of the possession of a weapon. *Id.* The Government would recommend a two-level downward adjustment for acceptance of personal responsibility and a one-level downward adjustment for Dyson's "timely notification of his intention to plead guilty." *Id.* However, the Government would oppose these deductions if Dyson "denie[d] involvement in the offense" or "[gave] conflicting statements about his involvement in the offense." *Id.* Based on these agreements the total offense

5

level was stipulated at 23. *Id*. The parties did not reach an agreement about Dyson's criminal history category, but stipulated that a state conviction "was part of a common scheme or plan" as the indicted conspiracy and was not a prior sentence.[3] *Id*.

The parties "agree[d] that with respect to the calculation of criminal history and the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines *will be raised or are in dispute*." ECF No. 1125 at 5 (emphasis added). They also "stipulate[d] and agree[d] pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 84 months to 115 months imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case."[4] *Id*. If the Court sentenced Dyson outside this range, "*either* party may elect to declare the agreement null and void." *Id*. (emphasis in original).

---

[3] The presentence report placed Dyson in criminal history category V with 12 criminal history points for second-degree assault, misdemeanor theft, carrying a deadly weapon in prison, and three handgun convictions. ECF No. 1212 at 9-10.

[4] Racketeering carries a maximum sentence of 20 years. 18 U.S.C. § 1963(a); ECF No. 1211 at 5.

On November 30, 2010, the Court held a Rule 11 hearing. ECF No. 1123. During the hearing, the Court asked Dyson whether his counsel had done anything Dyson had asked him not to do or failed to do anything which Dyson had requested. ECF No. 1211 at 9. Dyson responded, "No. He did a good job." *Id*. The Court informed Dyson of his rights and asked him if he understood that if he received a sentence of 115 months or less he was "going to get stuck with that" without a right of appeal. *Id*. at 17. Dyson stated that he understood and agreed to the truth of the statement of facts. *Id*. at 17-22. The Court found a sufficient factual basis for the plea. *Id*. at 22.

On March 14, 2011, Dyson's counsel sent a letter to the Court arguing for a sentence at the bottom of the agreed upon range. ECF No. 1154. On March 16, 2011, the Court held a sentencing hearing. ECF No. 1156. The Government argued for 115 months in accordance with the plea agreement, even though it was above the guidelines range calculated in the presentence report.[5] ECF No. 1212 at 3. Defense counsel argued at length for a sentence of 84 months. *Id*. at 4-8. The Court noted that Dyson's "admitted conduct as a member of the TTP Bloods involved relaying information from the gang leader, Steve Willock, to other members, and conspiring to

---

[5] The presentence report calculated a guidelines range of 84 to 105 months. ECF No. 1212 at 3.

distribute 22.4 to less than 28 grams of crack." Before the search, Dyson had been seen wiping prints from a handgun and passing it onto a confederate; later, he suggested to the police that, if they thought the gun was his, that "they check it for prints." *Id.* at 10. Based on his conduct and criminal history, the Court sentenced Dyson to 105 months.[6] *Id.* at 11.

Dyson's counsel timely filed an appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967). ECF No. 1244 at 2. The Fourth Circuit held that Dyson's plea was knowing and voluntary, and the Court had "substantially complied with the Mandates of Rule 11" *Id.* at 2-3. On January 1, 2013, Dyson filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 1319.[7]

II. Analysis

Dyson asserts that his counsel was ineffective by failing to seek a downward departure for his mitigating role in the

---

[6] After the Court sentenced Dyson, Dyson acknowledged that "[i]t could [have been] a lot worse."

[7] As part of his motion, Dyson detailed his many accomplishments and positive behavior while incarcerated. ECF No. 1319-1 at 14-16. The Court commends Dyson for his apparent rehabilitation and encourages him to continue on this path; however, this commendable conduct is not a basis for § 2255 relief.

conspiracy during plea bargaining. *Id.* at 4.[8] Dyson argues that if counsel had sought a minor participant departure, Dyson's sentencing range in the plea agreement would have been 70 to 87 months. *Id.* at 6-7; *see also* ECF No. 1341 at 4 (If counsel would have "bargained for a mitigating role adjustment[,] the Court could have departed downward 2-levels [adjusting [Dyson's] guidelines to 70-87 [months]).").

The Sixth Amendment guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove ineffective assistance, Dyson must show: (1) counsel's performance was deficient and (2) the deficiency prejudiced his defense. *Id.* at 687.

To show deficient performance, Dyson must establish that counsel made errors so serious that the "representation fell below an objective standard of reasonableness." *Id.* at 688. There is "a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct." *Kratsas v. United States*, 102 F. Supp. 2d 320, 322 (D. Md. 2000) *aff'd*, 9 F. App'x 107 (4th Cir. 2001) (*citing id.* at 688-89). To overcome this presumption, Dyson must show "that the challenged action [did not] amount[] to trial strategy." *Luchenburg v.*

---

[8] Dyson asserts that counsel was ineffective during the plea bargaining stage, not the sentencing stage. *See id.* ECF No. 1319.

9

*Smith*, 79 F.3d 388, 392 (4th Cir. 1996). To show prejudice, he must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the plea context, this means that Dyson must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Pursuant to U.S.S.G. § 3B1.2(b), a defendant's offense level may be decreased by two levels "if [the] defendant was a minor participant in any criminal activity." "[M]itigating role adjustments apply only when there has been group conduct and a particular defendant is less culpable than other members of the group to such a degree that a distinction should be made at sentencing between him and the other participants." *United States v. Gordon*, 895 F.2d 932, 935 (4th Cir. 1990). "[W]hether a role in the offense adjustment is warranted "is to be determined not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, but also by measuring each participant's individual acts and relative culpability against the elements of the offense of conviction." *United States v. Pratt*, 239 F.3d 640, 646 (4th Cir. 2001) (quoting *United States v. Palinkas*, 938

F.2d 456, 460 (4th Cir.1991) (internal quotation marks omitted). "The critical inquiry is thus not just whether the defendant has done fewer 'bad acts' than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense." *Palinkas*, 938 F.2d at 460.

Defense counsel successfully negotiated a multi-offense indictment, which carried three twenty-year maximum sentences and one ten-year maximum sentence, to a single count and a sentencing range of 84 to 115 months. *See* ECF No. 1334 at 9-11. To obtain this agreement, Dyson was required to admit the truth of the statement of facts.[9] These facts clearly established that Dyson was not a minor participant; thus, counsel was not objectively unreasonable in not seeking such a departure.[10]

---

[9] Counsel and Dyson did object to some of the facts and had them removed. *See* ECF No. 1125 at 14.

[10] *See United States v. Carrera Seguame*, 142 F.3d 447, at *1 (9th Cir. 1998) (unpublished decision) ("Because the evidence at trial did not support an adjustment or downward departure for minimal participation, counsel was not ineffective for failing to argue for one."); *Brooke v. United States*, No. DKC 08-289, 2015 WL 1186488, at * 3 (D. Md. Mar. 13, 2015) ("[Counsel's] decision not to argue minor role participant at sentencing fell well within the bounds of reasonableness, as Section 3B1.2(b) was inapplicable to Petitioner. As part of her plea agreement, Petitioner admitted facts that demonstrated her integral role in the conspiracy. During the Rule 11 hearing, the Government read facts that established her integral role, and Petitioner agreed that such facts were true."); *see also Ortiz v. United States*, No. AW-11-2317. 2011 WL 6945711, at *3 (D. Md. Dec. 30, 2011); *Tyagi v. United States*, No. 08 CV 10851(RPP), 2010 WL 1050292, at *2 (S.D.N.Y. Mar. 19, 2010); *McDaniel v. United States*, No.

11

Moreover, a "C Plea" is a contract; Dyson's counsel could not allocute for a role adjustment outside of the C Plea range that was negotiated. The plea agreement included extensive stipulations about the base level of the offense and criminal history. *See* ECF No. 1125 at 4-6. If counsel insisted on such a deduction in contradiction to the statement of facts, the Government could have exercised its right to oppose a two-level downward departure for acceptance of responsibility or voided the entire agreement. *See id.* at 4. Nor could counsel have argued for such a departure at sentencing, because the parties agreed that "with respect to the calculation of criminal history and the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute," and if the Court had sentenced Dyson below the agreed range, the Government could have voided the plea agreement. *Id.* at 4. Counsel made tactical decisions and acted reasonably in obtaining the agreement.

Further, Dyson has failed to show any prejudice. Dyson cannot argue that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

---

4:05CR130-M, 2009 WL 1106817, at *2-3 (N.D. Miss. Apr. 23, 2009).

have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  This is not a circumstance in which counsel failed to provide information to a defendant before the defendant's acceptance of a plea agreement.  Dyson was informed that he was agreeing to a sentencing range of 84 to 115 months and would not be permitted to argue for a departure below this range.  ECF No. 1125 at 4-5.  The Court also informed Dyson that if he received a sentence of 115 months or less there would be no right of appeal.  ECF No. 1211 at 17.  Dyson accepted the plea and was sentenced to 105 months, the upper end of the agreed upon range.  *See id.* at 17-22; ECF No. 1212 at 11.  Dyson received exactly what he bargained for.  *Cf. United States v. Powell*, 347 F. App'x 963, 965 (4th Cir. 2009) ("A sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement is contractual and not based upon the guidelines.").

Accordingly, the Court will deny Dyson's motion to vacate, set aside, or correct his sentence.

C. Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the court's decision in a § 2255 case.  *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  § 2253(c)(2).  The

petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotation marks omitted). Denial of a COA does not prevent the petitioner from seeking permission from the Court of Appeals to file a successive petition or pursuing his claims upon receipt of such permission.

Because Dyson has not made a substantial showing of the denial of his constitutional rights, the Court will not issue a COA.

III. Conclusion

For the reasons stated above, Dyson's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 will be denied.

3/24/15
Date

/s/ William D. Quarles, Jr.
United States District Judge